UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TODD NELSON, a State of Washington resident,<br><br>     Plaintiff,<br><br>  v.<br><br>PEREGRINE SPORTS, LLC, a Delaware limited liability company, doing business as PORTLAND TIMBERS,<br><br>     Defendant. | Case No. 3:17-cv-5646<br><br>**COMPLAINT**<br><br>1. BREACH OF CONTRACT/ PROMISSORY ESTOPPEL<br><br>2. VIOLATION OF CONSUMER/TRADE PROTECTION ACTS<br><br>3. MISREPRESENTATION<br><br>4. TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY<br><br>5. DECLARATORY JUDGMENT AND SPECIFIC PERFORMANCE<br><br>**[JURY TRIAL REQUESTED]** |

By and through his attorney, Plaintiff Todd Nelson ("Nelson" or "Plaintiff"), hereby alleges the following against Defendant Peregrine Sports, LLC, doing business as the Portland Timbers ("Timbers"):

/ / /

/ / /

COMPLAINT - 1
Case No. 3:17-cv-5646
NELT03-000001 - 2150771_2.doc

LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

**NATURE OF THE ACTION**

1.     This action is brought to remedy the Timbers' wrongful, unfair and unilateral termination of Nelson's right to annually buy Season Tickets to the Portland Timbers' home soccer games. The Timbers also engaged in unfair or deceptive acts or practices under Washington's Consumer Protection Act or the Federal Trade Commission Act when it advertised to the public that having Portland Timbers Season Tickets created an ownership interest in those tickets, rather than a revocable license.

2.     In particular, Nelson alleges: breach of contract, misrepresentation, violations of Washington's and the federal government's respective Consumer Protection Act and intentional interference with Nelson's contractual relationship. Nelson seeks declaratory relief, specific performance, and damages.

**THE PARTIES**

3.     Plaintiff Todd Nelson is a Cathlamet, Washington resident who has long held season tickets (also known as an Annual Membership) for the Portland Timbers.

4.     Defendant Peregrine is a limited liability company, organized and existing under the laws of the State of Delaware doing business under the assumed name of Portland Timbers. Its principal place of business is at 1844 SW Morrison St., Portland, Oregon 97205. Peregrine and the Portland Timbers are registered with the Oregon Secretary of State and are doing business primarily in the State of Oregon. Peregrine advertises in Washington, and sells tickets to Washington residents.

**JURISDICTION AND VENUE**

5.     The Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(a) because the amount in controversy exceeds $75,000 and the action is between citizens of different states. The Timbers' deceptive advertising, by which it holds out its Annual Memberships as having an ownership or possessory aspect to them, violates the Federal Trade Commission Act, which outlaws unfair acts or practices that

COMPLAINT - 2
Case No. 3:17-cv-5646
NELT03-000001 - 2150771_2.doc

LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

affect commerce. This Court also has subject matter jurisdiction over this action under 28 U.S.C. §1331 because the action arises under the laws of the United States.

6.      The Court has specific and general personal jurisdiction over the Defendant under Washington's long-arm statute. The facts giving rise to the Plaintiff's claim arise from the Defendant's business and advertisement contacts within the Western District of Washington. The Defendant's regular and sustained conduct within the State of Washington also means the Defendant has submitted to this Court's jurisdiction.

7.      Venue is also proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions causing the claims occurred within this judicial District.

**ALLEGATIONS APPLICABLE TO ALL CLAIMS**

8.      Plaintiff Nelson is a ticket broker who purchases season tickets from various major league teams or clubs to re-sell in authorized and legal resale ticket marketplaces.

9.      Peregrine has owned and operated the Timbers since July 25, 2007. The Timbers is a professional soccer team. Since 2011, the Timbers have participated and competed throughout the United States in the Major League Soccer ("MLS") association. The Timbers have sold-out every game and have great fan support. In short, there is a great demand for Timber tickets.

10.     Nelson began to purchase and re-sell Timber season ticket packages in 2009 when the Timbers were still playing in the United Soccer Leagues First Division ("USL"). Despite the Timbers not being an MLS team, Nelson acquired 99 season tickets for the Portland Timbers in 2010. He committed to buy season tickets while the team was still playing in the USL in large part because he wanted the rights to continue to purchase season tickets once the Timbers became a major league team.



LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

11.     Nelson purchased the multiple season ticket packages intending to re-sell them at a profit on legal resale marketplaces such as Stubhub. The Timbers knew of, supported and even benefitted from Nelson's business operations. Indeed, the Timbers had a direct relationship with Stubhub and received compensation from Nelson's sales on that website. The Timbers never objected to Nelson's activities or complained that his conduct violated any ticket policies or practices.

12.     Nelson annually purchased 111 season ticket packages. He also purchased playoff tickets, CONCACAF Champions League, and exhibitions type games. A majority of these season tickets were 1st row tickets and had great value.

13.     Nelson owned the following season tickets: (A) Section 119, Row A | Seats 5 and 6; (B) Section 119, Row A | Seats 16, 17, 18, 19, 20, 21, and 22; (C) Section 119, Row B | Seats 16, 17, 18, 19, and 20; (D) Section 118, Row E | Seats 7, 8, 9, 10, 11, and 12; (E) Section 118, Row F | Seats 8, 9, 10, 11, and 12; (F) Section 218 Row T | Seats 11, 12, 13, and 14; (G) Section 115, Row A | Seats 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10; (H) Section 115, Row B | Seats 5, 6, 7, 8, 9, 10, 13, and 14; (I) Section 92, Row A | Seats 1 and 2; (J) Section 94, Row A | Seats 1, 2, 3, 4, 5, 6, and 7; (K) Section 121, Row A | Seats 1, 2,  5, 6, 7, 8, 9, 10, 11, 12, 13, and 14; (L) Section 121, Row B | Seat 5, 6, 7, 8, 9, 10, 11, 12, and 13; (M) Section 120, Row A | Seat 7, (N) South Deck 5, Row A | Seats 5-15; (O) South Deck 6, Row A | Seats 3-15; (P) South Deck 6, Row B | seats 16 and 17; (R) South Deck 6, Row D | Seats 16 and 17; (S) Section 109, Row A | Seat 9; (T) Section 109, Row A | Seat 12; and (U) Section 109, Row B | Seat 10, 11, and 12.

14.     Through its communications and actions, the Defendant led Nelson to believe he would have the right to continue to purchase at least these 111 season tickets for as long as he wished. Nelson relied upon these promises.

15.     The Timbers regularly sent Nelson marketing information, ticket information, including e-mails, where the Timbers represented that season ticket holders



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

had an "ownership" interest in their season tickets. The Timbers also sent advertisements, promotions, and other communications to encourage loyal fans or brokers to be annual season ticket holders.

16.    Prior to the 2015 MLS season, the Portland Timbers sold their season ticket packages as "Season Tickets." However, in 2016, the Timbers changed the title to "Annual Membership," but did not change the policy relating to "ownership" of that "Membership." Just like the prior "Season Tickets," the Annual Membership came with distinct ownership and renewal rights.

17.    From 2009 to 2016, Nelson (and others) regularly received information from the Timbers about his memberships/tickets, including instructions on renewing. The Timbers encouraged Nelson to faithfully renew his memberships or tickets on time. The Timbers marketed the various benefits and advantages of being an annual season ticket holder. The Timbers led Nelson to believe he would always have first rights to at least the same number of tickets (111) he had purchased the previous year. The Timbers led Nelson to believe that he would have first rights to his very valuable 111 specific seats which Nelson carefully selected, not just the same number of seats he had purchased the previous year, but very specific seats which included first row and highly prized mid-field center seats.

18.    The Timbers further instilled and created this expectation by referring to Nelson as the owner of his tickets/memberships. The Timbers informed Plaintiff and others that their tickets/membership could be willed or passed down to family members.

19.    Nelson invested in becoming a Timber season ticket holder even before the Timbers became an MLS team. The Timbers encouraged Nelson and others to become season ticket holder even before the Timbers started to play in the MLS so that these fans and brokers could have first rights to Timber tickets once the team started to play major league soccer.

 LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

20.     Between 2011 and 2016, Nelson owned 111 separate Timbers' Season Tickets or Annual Memberships. Nelson reasonably believed and expected that he would have a right to continue to purchase these season tickets every year.

21.     But that changed in July 2016 when the Timbers' told Nelson it had unilaterally terminated his right to acquire season tickets. At all times, Plaintiff Nelson was ready, willing, and able to pay, in full, the price for his season tickets.

22.     When confronted, the Timbers stated they wanted to make those tickets available to those on the Timbers' season ticket waiting list (which had ballooned to over 12,000 people). Nelson later learned however that the Timbers sold his tickets to another broker.

23.     The Timbers clearly have no problems or issues with their season ticket holders reselling their tickets as the Timbers have been advertising that they are partnered with SeatGeek for any person trying to sell their Timbers' tickets.

24.     Nelson routinely sold his tickets on Stubhub or other resale ticket marketplaces. The Timbers knew of and received benefit from Nelson selling his tickets in the open market, including a direct benefit from Stubhub. Nelson had valuable relationships established with vendors for re-selling the tickets, but has now suffered significant financial harm due to the Timbers' unilateral decision to not renew his season tickets/memberships.

25.     Significantly, the Timbers have issued, and posted various advertisements or publications, promoting the benefits and advantages to being a Timbers "Annual Member." For example, the Timbers advertise their Annual Memberships come with "ownership" status that can be transferred to others. The Timbers further advertise that the "owner" of an Annual Membership bears the right, obligation, or responsibility to "renew" the Annual Membership for upcoming seasons.



LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

26.    The Timbers additionally advertise that owners of "Annual Memberships" are provided a "priority number," to determine status for any benefits. Based upon his purchasing history, Nelson has amassed a high priority number. The Timbers have created the perception, especially since Plaintiff Nelson was provided the unfettered ability to renew his membership at his own discretion from 2009 to 2016, that Annual Memberships were renewable at the discretion of the "owner" of the membership and for any upcoming season.

27.    The Timbers never informed Nelson that his Annual Memberships or Season tickets were subject to the Timbers' "unfettered whim" to terminate his right of renewal at any time and for any reason. Indeed, the Timbers led Nelson to believe that he would have the continuous right to renew his 111 season tickets provided he timely responded to the Timber's announcements to repurchase those tickets.

28.    Nelson owned premier season tickets, including some that were in the front row. Due to the Timbers' unilateral actions, Nelson has sustained significant and irreparable harm. For example, during the 2016 season, Nelson earned $250,000 for the regular season. He also earned over $285,000 for the 2015 MLS Season. Due to the Timbers not making these seats available, Nelson will continue to suffer irreparable harm since he is losing access to season tickets that Plaintiff Nelson "owns."

29.    With the Timbers' recent success, including winning the MLS Cup in 2015, the demand for tickets has greatly increased. Nelson will therefore continue to suffer economic harm unless the Timbers reverse its position and renew Nelson's rights.

## FIRST CAUSE OF ACTION

### Breach of Contract/Promissory Estoppel

### (Express or Implied-in-fact)

30.    Nelson repeats, alleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

COMPLAINT - 7
Case No. 3:17-cv-5646
NELT03-000001 - 2150771_2.doc



LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

31.     Until the 2015 season, the Timbers annually provided Nelson with 111 season tickets.

32.     Nelson owned and possessed the rights to these specific 111 Annual Memberships. The Timbers agreed to give Mr. Nelson first right to purchase his exact and existing 111 very valuable specific season tickets which he has long since held.

33.     Whether expressed or implied, Nelson and Timbers agreed that Nelson would have the first right to purchase the same number of season tickets as he had acquired the year before.

34.     Nelson had a right to rely upon the Timber's agreement or representation to believe he could annually acquire season tickets.

35.     The Timbers also created the expectation that Nelson's Memberships or Season Tickets came with a yearly Renewal Right, i.e., the contractual right to purchase a Season Ticket for each successive MLS Season, especially since the Timbers advertised that the holder of an Annual Membership had possessory and ownership rights over that Membership with the responsibility to ensure that renewal of that Membership for any upcoming MLS season was a burden placed upon the owner/holder of the Membership.

36.     The Timbers are estopped from denying the existence of, or repudiating, the contractual Renewal Rights of Nelson without providing any consideration. The Timbers knowingly induced Nelson to expect to receive renewal rights over the course their respective relationship and course of conduct over the years during which the Timbers agreed to, and did, provide Nelson with season tickets and renewal rights.

37.     Nelson has performed, or is ready, willing and able to perform, all contractual obligations during their contractual relationship, and was ready, willing, and able to pay for his 2017 Memberships, but Nelson was denied his legal right to renew when the Timbers unilaterally announced—without providing any consideration in



LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

exchange for the termination of such rights—in breach of their existing contracts with Nelson that they would not renew Nelson's season tickets.

38.    The Timbers unilaterally terminated Nelson's contractual rights and expectations.

39.    As the direct and proximate result of the Timbers' conduct, Nelson has suffered and, if the Timbers' conduct is not stopped, will continue to suffer, irreparable injury and significant damages in an amount to be proven at trial, but that amount is over $75,000.

## SECOND CAUSE OF ACTION

### Violation of Consumer/Trade Protection Acts

40.    Nelson repeats, alleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

41.    The Timbers advertise in Washington that their Annual Memberships come with "ownership" with the right to transfer "ownership" rights to any Annual Membership for season tickets to another person. The Timbers further advertised in Washington that the "owner" of an Annual Membership bears the right, obligation, or responsibility to "renew" the Annual Membership for upcoming seasons.

42.    The Timbers have engaged in unfair or deceptive acts or practices (which occurred in trade or commerce) by advertising to the public that having Portland Timbers Season Tickets creates an ownership interest in those tickets rather than a revocable license which the Timbers could revoke at any time. The Timbers' conduct violates Washington's Consumer Protect Act.

43.    The Timbers' deceptive advertising also violates the Federal Trade Commission Act, which outlaws unfair acts or practices that affect commerce and the Timbers' deceptive acts have occurred across State lines by having presented their false advertising to a Washington resident.



LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

44.    As the direct and proximate result of the Timbers' deceptive acts or practices, Nelson has suffered and, if the Timbers' conduct is not enjoined, will continue to suffer irreparable injury, and damages in an amount to be determined at trial, but that amount is over $75,000. The Washington Consumer Protection Act, under RCW 19.86.090 allows a prevailing plaintiff to recover attorney fees and costs incurred, treble damages, and injunctive relief, which Plaintiff Nelson is requesting and entitled to due to the Timbers' actions.

45.    Because Nelson's remedy at law is inadequate, Nelson seeks, besides its damages, temporary, preliminary, and permanent injunctive relief to recover and protect his ownership rights and other legitimate business interests in his Portland Timbers season tickets or Annual Memberships.

46.    Nelson has been damaged by the foregoing, and is entitled to injunctive relief and his damages, in an amount to be determined at trial (but in an amount no less than $75,001.00), and an award of attorney's fees and costs.

**THIRD CAUSE OF ACTION**

**Misrepresentation**

47.    Nelson repeats, alleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

48.    To induce Nelson to begin purchasing season tickets, the Timbers made material misrepresentation of facts to Nelson with the intent that Nelson would rely upon those facts. The Timbers knew, or should have known, that these facts were not true. Nelson reasonably relied upon those facts believing them to be true.  Nelson has suffered damages in an amount to be proven at trial as a result of the Timbers' misrepresentations.

/ / /

/ / /

COMPLAINT - 10
Case No. 3:17-cv-5646
NELT03-000001 - 2150771_2.doc



LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**FOURTH CAUSE OF ACTION**

**Tortious Interference with Business Expectancy**

49.     Nelson repeats, alleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

50.     Nelson had reasonable business expectancy and ongoing relationships with his customers. Nelson had a reasonable expectation in engaging in business with, and in earning profits in sales to his existing customers with whom the Timbers knew Nelson had a relationship with and knew that Nelson was expected to continue his business in reselling Timbers tickets online via resale ticket marketplaces, including Craigslist, Stubhub, and SeatGeek, and through person to person sales.

51.     The Timbers knew of Nelson's business relationship and business expectancy from his customers.

52.     The Timbers intentionally, and in violation of their contractual and legal duties with Nelson, interfered with that expectancy by unlawfully revoking Nelson's ownership status to his Timbers' tickets/memberships, and by other improper means. The Timbers engaged in fraudulent or deceitful conduct by stating to Nelson they wanted to sell his Memberships to individuals on the Timbers' waiting list, but this representation turned out to be false.

53.     As a direct and proximate result of the Timbers' improper conduct, Nelson has suffered damages including lost profits, consequential damages, economic and non-economic damages, and special damages, the exact amount to be determined at trial, but that amount is over $75,000.

**FIFTH CAUSE OF ACTION**

**Declaratory Judgment and Specific Performance**

54.     Nelson repeats, alleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

COMPLAINT - 11
Case No. 3:17-cv-5646
NELT03-000001 - 2150771_2.doc



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

55.     Nelson has a property, contract, or reasonable expectation right to Timber Season tickets. Nelson is also ready, willing and able to perform.

56.     Nelson could suffer irreparable harm unless the court intervenes and declares the rights of the party or requires the Timbers to renew Nelson's right to annually purchase season tickets.

### JURY DEMAND

Plaintiff Nelson seeks a trial by jury of all issues so triable.

### RELIEF REQUESTED

WHEREFORE, Plaintiff Todd Nelson respectfully demands judgment in its favor and against Defendant as follows:

A.     Declaring that Nelson has a property, contract or reasonable expectation right to annual season tickets for Timber home soccer games and that the Timbers could not unilaterally rescind that right.

B.     Ordering the Timbers to allow Nelson first right to purchase the same 111 season tickets each year.

C.     Awarding damages as described in each of the above claims, for Plaintiff Nelson and against Defendant Peregrine/Timbers in amounts to be determined at trial, but the amount will exceed $75,000.

D.     Awarding Nelson pre-judgment and post-judgment interest, treble damages, and his attorneys' fees, costs and other expenses in this action under the Consumer Protection Act (RCW 19.86, et seq.);

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT - 12
Case No. 3:17-cv-5646
NELT03-000001 - 2150771_2.doc



LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

1      E.      Granting Nelson such other and further relief as this Court deems just

2  and proper.

3      DATED this 15th day of August, 2017.

4                              LANDERHOLM, P.S.
                               /s/ Phillip J. Haberthur
5                              _____
                               BRADLEY W. ANDERSEN, WSBA #20640
6                              PHILLIP J. HABERTHUR, WSBA #38038
                               Of Attorneys for Plaintiff Todd Nelson
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT - 13
Case No. 3:17-cv-5646
NELT03-000001 - 2150771_2.doc



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122