UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TODD NELSON,<br><br>　　　　　　　　　　Plaintiff,<br>　　v.<br><br>PEREGRINE SPORTS, LLC, a Delaware limited liability company, doing business as PORTLAND TIMBERS,<br><br>　　　　　　　　　　Defendant. | CASE NO. 3:17-cv-05646-RJB<br><br>ORDER ON DEFENDANT'S MOTION TO TRANSFER, OR IN THE ALTERNATIVE, DISMISS |

THIS MATTER comes before the Court on Defendant Peregrine Sports, LLC, d/b/a Portland Timbers' Motion to Transfer, or in the Alternative, Dismiss. Dkt. 5. The Court has considered the motion, Plaintiff Todd Nelson's Response (Dkt. 13), Defendant's Reply (Dkt. 16), and the remainder of the file herein.

Defendant seeks to transfer this action from the Western District of Washington to the District of Oregon, which Defendant argues is a more convenient forum under 28 U.S.C. §1404. Defendant argues in the alternative that the Complaint (Dkt. 1) fails to state a claim upon which

ORDER ON DEFENDANT'S MOTION TO TRANSFER, OR IN THE ALTERNATIVE, DISMISS - 1

relief can be granted and, particular to the Third Cause of Action, to state a claim with the requisite particularity under Fed. R. Civ. P. 9(b).

## I.     **MOTION TO TRANSFER**

A. <u>Facts</u>.

For purposes of this motion, the parties agree—or at least do not substantively oppose, by declaration or otherwise—the majority of the relevant facts, which are either found in the Complaint or declarations submitted by the parties, *to wit*, Mr. Nelson, for Plaintiff, and Joseph Cote for Defendant. *See* Dkt. 1, 6, 14, 15.

The case centers on the allegation that Portland Timbers denied Mr. Nelson the chance to renew season tickets. According to the Complaint, Mr. Nelson has purchased season tickets since 2009 until July 2016, when Portland Timbers told Mr. Nelson that his "right to acquire season tickets" had been "unilaterally terminated . . . [even though] Plaintiff Nelson was ready, willing, and able to pay, in full, the price for his season tickets." Dkt. 1 at ¶21. *See also*, Dkt. 14 at ¶3. Mr. Nelson purchased tickets for commercially for profit, buying as many as 111 "very valuable . . . specific seats which Nelson carefully selected." *Id*. at ¶¶16, 17. Because Mr. Nelson did not purchase tickets in July 2016, it is alleged that Mr. Nelson can no longer be a member of The Axe Society, an "exclusive" club with membership contingent on the purchase of tickets for the 2010 season and thereafter. Dkt. 14 at ¶¶4, 5. The Complaint alleges common law causes of action for breach of contract and misrepresentation, as well as a cause of action for violations of the Washington Consumer Protection Act and Federal Trade Commission Act. *Id*. at ¶¶30-56.

Mr. Nelson currently resides in Cathlamet, Washington, where he has resided "at all material times." Dkt. 14 at ¶2. Defendant does not dispute that Mr. Nelson currently resides in Washington, but contends that membership data show an Oregon address in connection with

purchase of 2010 season tickets. Dkt. 15 at 3. According to Defendant's internal data, Mr. Nelson, on several occasions, submitted address information to purchase tickets from Oregon addresses. Dkt. 15 at ¶¶3, 4.

Portland Timbers Senior Vice President, Joseph Cote, represents that Portland Timbers' stadium is in Portland, Oregon, where the team plays its home games. Dkt. 6 at ¶3. Mr. Cote oversees the sales, strategy and services of all tickets for the team and represents that all staff and documentation connected to the purchase of "Season Tickets," which Portland Timbers now refers to as "Annual Memberships," are also located in Portland, Oregon. *Id*. at ¶¶4-7. Mr. Cote declares that Portland Timbers do not direct advertisements into the State of Washington, "[w]ith the exception of a single billboard . . . in 2010, and any Portland metro area-based digital advertising that spills into southwest Washington," for example, in Vancouver, Washington. Dkt. 15 at ¶5.

B. <u>28 U.S.C. §1404 legal standard.</u>

Under 28 U.S.C. §1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" Section 1404(a) "requires two findings—that the district court is one where the action 'might have been brought' and that the 'convenience of the parties and witnesses in the interest of justice' favor transfer." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).

C. <u>Discussion</u>.

*1. Might have been brought.*

There does not appear to be any dispute that the case might have been brought in the District Court of Oregon. As Defendant points out—and Plaintiff does not counter—the District

Court of Oregon could have subject matter jurisdiction and personal jurisdiction over this case, and venue could be proper. Dkt. 5 at 3, 4. Subject matter could be based on diversity jurisdiction, 28 U.S.C. §1332, because the amount in controversy is greater than $75,000, Plaintiff resides in Washington, and Defendant is based in Oregon. Personal jurisdiction could be established because of Defendant's contacts with Oregon, the location of its principal place of business. Venue could be established under 28 U.S.C. §1391(b)(1), because Defendant is a corporation that resides in Oregon.

The Court finds that the case might have been brought in the District of Oregon.

2. *Convenience and interest of justice.*

The decision of whether to transfer a case requires an "individualized, case-by-case consideration of convenience and fairness" and is vested in the discretion of the court. *Stewart Org., Inv. C. Ricoh Corp.*, 487 U.S. 222 (1988). The party seeking to transfer bears the burden to "make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Vo. V. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). In exercising their discretion, courts may consider factors, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)

In this case, with the exception of one factor, the plaintiff's choice of forum, all *Jones* factors are neutral or favor Defendant. In sum, Defendant has met its burden. This is an Oregon case that should be litigated in the District of Oregon.

The first factor, location where agreements were negotiated and executed, favors Defendant. Plaintiff alleges breach of contract based on denied membership in The Axe Society, a club with membership contingent in part on purchase of tickets for the 2010 season. Per Defendant, Mr. Nelson purchased tickets for that season when residing in Oregon, so any consequential obligation now at issue was "executed" in Oregon. Plaintiff's briefing states that Mr. Nelson "completed the agreement electronically . . . thus the Agreement was executed in Washington," Dkt. 13 at 6, 7, but Plaintiff's briefing provides no support in the record for this conclusion, and Defendant's showing directly refutes it. Portland Timbers Senior Vice President, Mr. Cote, also represents that Portland Timbers drafted relevant terms and conditions and administratively processed ticket purchases in Oregon.

The second factor, state familiar with governing law, does not favor either party, because this Court has made no finding as to whether Washington or Oregon law applies. Further, if the case is transferred, the District Court of Oregon is fully capable of applying Washington law.

The third factor, the plaintiff's choice of forum, favors Plaintiff, because Mr. Nelson resides in Washington. The Court notes, however, that Cathlamet, Washington, is a town that borders Oregon, separated only by the Columbia River.

The fourth factor, parties' contacts with the forum, favors Defendant. Regarding Defendant's contacts with Oregon, Defendant can point to its Portland, Oregon stadium, where the team plays all home games. Portland Timbers Senior Vice President, Mr. Cote, represents that "with the exception of a single billboard . . . in 2010, and any Portland metro area-based digital advertising that spills into southwest Washington" the corporation has not directed advertisements into the State of Washington. Conversely, Plaintiff has made no showing about

his contacts (or lack of contacts) with Oregon—the record shows only that that Mr. Nelson resides in Washington in a town that borders Oregon.

The fifth factor, contacts relating to the plaintiff's cause of action in the chosen forum, favors Defendant. Plaintiff seeks to litigate terms of a contract entered into with an Oregon-based company to watch an Oregon-based sports team.

The sixth factor, differences in the costs of litigation, strongly favors Defendant. It would appear that Defendant will need to produce most of the discovery to be exchanged by the parties, to include, for example, deposition of persons instrumental to drafting relevant agreements between the parties. Defendant represents that its expected witnesses and documents are in Oregon. Even if much of the written discovery ultimately produced by Defendant is electronic, there is no showing that discovery from Defendant is likely to be found in the State of Washington. Presumably discovery from Plaintiff, e.g., about the scope of damages, would be in Washington, where Plaintiff resides, but Plaintiff has not elaborated on such costs.

The seventh factor, availability of compulsory process to compel attendance of unwilling non-party witnesses, favor Defendant. Portland Timbers is located in Portland, Oregon, which is more than 100 miles from this Court, and Defendant represents that employees with knowledge relevant to this litigation reside in Oregon, so it would appear that at least some witnesses fall outside of this Court's subpoena powers, including Mr. Nelson himself. *See* Fed. R. Civ. P. 45(c)(1)(A) ("within 100 miles of where the person resides, is employed, or regularly transacts business in person"). Plaintiff has made no showing to the contrary.

The eighth factor, ease of access to sources of proof, favors Defendant. To the extent that that discovery would include depositions of Portland Timbers employees or written records in

| | |
|---|---|
| 1 | Portland Timbers' possession, this discovery would more likely to be found in Oregon than |
| 2 | Washington. |

The convenience of the parties and interest of justice favor the District of Oregon as the preferred forum for this case. Defendant's motion to transfer should be granted.

## II. MOTION TO DISMISS

Because Defendant requests that the Court consider dismissal for failure to state a claim in the alternative to its request to transfer, the Court declines to reach the merits of Defendant's motion to dismiss. Defendant's motion to dismiss is denied without prejudice.

\* \* \*

Defendant Peregrine Sports, LLC, d/b/a Portland Timbers' Motion to Transfer, or in the Alternative, Dismiss (Dkt. 5) is GRANTED IN PART. The case is HEREBY TRANSFERRED to the District of Oregon.

The Court does not reach the merits of Defendant's request to dismiss the case. To that extent, Defendant's Motion is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address. The clerk is further directed to transfer this case to the District of Oregon.

Dated this 11th day of October, 2017.

*[signature]*

ROBERT J. BRYAN
United States District Judge