IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TODD NELSON**, | Case No. 3:17-cv-1718-PK |
| Plaintiff, | **ORDER** |
| v. | |
| **PEREGRINE SPORTS, LLC**, | |
| Defendant. | |

**Michael H. Simon, District Judge.**

Before the Court is Defendant's motion to dismiss Plaintiff's First Amended Complaint ("Complaint") for failure to state a claim. United States Magistrate Judge Paul Papak issued Findings and Recommendation ("F&R") in this case on April 14, 2018. ECF 30. The Court adopts Judge Papak's F&R with two exceptions explained below, and grants Defendant's motion to dismiss.

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review de novo magistrate's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate's recommendations for "clear error on the face of the record."

## BACKGROUND

Plaintiff Todd Nelson is a ticket broker who purchases and re-sells season tickets from various athletic teams, including the Portland Timbers ("Timbers"), Portland's Major League Soccer ("MLS") team. The Timbers are owned by Defendant Peregrine Sports. Beginning in 2009, before the Timbers were an MLS team, Plaintiff began to purchase and re-sell Timbers season tickets.[1] In 2010, Plaintiff alleges, the Timbers advertised the Axe Society, an exclusive club for those who purchased season tickets for the 2010 season, the year in which the Timbers became an MLS team. The advertisement for the Axe Society allegedly promised that those who purchased an annual membership by December 31, 2010 would enjoy "lifetime membership" in the Axe Society. In order to maintain one's membership in the Axe Society, members were required to purchase at least one season ticket each year. Plaintiff alleges that he continued to

---

[1] At different times, the Timbers have called these "season tickets" or "annual memberships." The Court uses the terms interchangeably.

buy a large number of season tickets, buying 111 season tickets each year between 2011 and 2016. In 2016, Plaintiff alleges, Defendant refused to allow Plaintiff to purchase future season tickets. Plaintiff sues Defendant, alleging breach of contract,[2] misrepresentation, and tortious interference with business expectancy.[3]

Judge Papak recommended that Defendant's motion to dismiss be granted, and that Plaintiff's claims be dismissed without prejudice to the extent premised on a theory of express contract, but with prejudice to the extent premised on any other contract theory. Judge Papak further recommended that Plaintiff's misrepresentation claim be dismissed with prejudice, and that Plaintiff's claim for intentional interference with economic relations be dismissed without prejudice.

Plaintiff timely filed an objection (ECF 32), to which Defendant responded (ECF 33). Plaintiff objects to Judge Papak's conclusions regarding Plaintiff's breach of contract claims, to Judge Papak's conclusion that Plaintiff's claim for intentional misrepresentation should be dismissed with prejudice, as opposed to without prejudice, and to Judge Papak's conclusion that Plaintiff fails to state a claim for intentional interference with economic relations.

**A. Contract Claims**

Plaintiff's Complaint alleges breach of contract under three theories of contract: express contract, implied-in-fact contract, and promissory estoppel. As Judge Papak explained, under

---

[2] Plaintiff asserts three theories of contract liability: express contract, implied-in-fact contract, and promissory estoppel. With respect to this second theory, the parties and the F&R use the term "implied contract." An implied-in-law contract is distinct from a contract that is implied-in-fact. Plaintiff's arguments reflect that he is asserting an implied-in-fact contract. Plaintiff does not argue that there was any implied-in-law contract.

[3] Plaintiff has voluntarily withdrawn his Unfair Trade Practices Act claim.

each theory, Plaintiff's contract claims are premised on Plaintiff's assertion that he had a perpetual right to renew his season tickets.

In objecting to the F&R, Plaintiff argues that the Axe Society advertisement and other statements by Defendant clearly provided for a lifetime right to continuously purchase season tickets. Plaintiff alleges that the Timbers led Nelson to believe he would always have first rights to at least the same 111 seats he had purchased the previous year. Plaintiff alleges no actual facts or representations made by the Timbers, however, that plausibly suggest such a promise. Plaintiff alleges that the Timbers created this expectation in part by referring to Nelson as the owner of his season tickets, and by representing that season tickets could be "willed" or passed down to family members. At most, however, as Judge Papak found, these statements imply an ownership interest in a given *annual* membership or *season* ticket, which, by its terms, extends only for one year or season. Plaintiff also states, though he did not allege in his Complaint, that a "Guest Guide" indicated that season tickets could be revoked for cause, such as a breach of the code of conduct. This does not materially differ from or add to other facts alleged that Judge Papak properly found to be insufficient to state a claim. At most, it suggests only that an *annual* membership may be terminable only for cause, and does nothing to establish that the right to purchase *future season tickets* may be revoked only for cause. The Court agrees with the F&R's conclusion that Plaintiff has not alleged any express provision providing for a perpetual right to repurchase the same number of tickets purchased in the prior year.[4]

---

[4] The Court also notes that Plaintiff alleges that he "purchased a large number of season tickets for the Timbers prior to 2010," relying on the Axe Society advertisement. ECF 22 at ¶ 12. More specifically, Plaintiff alleges he "acquired 99 season tickets for the Portland Timbers in 2010." ECF 22 at 3 ¶ 9. Later, Plaintiff alleges that he "annually purchased 111 season ticket packages." *Id*. at ¶ 15. Plaintiff further alleges that the Axe Society advertisement, and Plaintiff's purchase of tickets in or before 2010 in reliance on that advertisement, established a perpetual right to purchase the same season tickets for as long as he wished, suggesting that those tickets

PAGE 4 – ORDER

Plaintiff also objects to the F&R's conclusion that Oregon law does not permit the enforcement of an implied-in-fact contract to the extent it purports to provide for perpetual rights. Plaintiff argues that this rule, derived from *Klamath Off-Project Water Users, Inc. v. Pacificorp*, 237 Or. App. 434 (2010), and the statute of frauds, Oregon Revised Statutes ("ORS") § 41.580, in conjunction, is not found anywhere in Oregon case law. Plaintiff cites no case law, however, suggesting that it is improper to jointly consider both the requirement under Oregon law that perpetual agreements be "clearly provided" for, and Oregon's statute of frauds. In *Portland Section of Counc. of Jewish Women v. Sisters of Charity of Providence in Ore.*, 266 Or. 448 (1973), a plaintiff sought to enforce an alleged contract that required a hospital, in return for payment, "to furnish ward accommodations and services in perpetuity" to a person designated by the plaintiff. *Id*. at 451. The defendant argued that the statute of frauds prevented the agreement from being enforced because no signed writing memorialized the agreement. The court concluded not that the statute of frauds did not apply to this alleged perpetual contract, but that "[t]he payment of the full consideration by plaintiff and the money's acceptance and retention constitute such performance of the contract sufficient to take the agreement out of the statute of frauds." *Id*. at 453-54. In light of this case, the Court concludes that Judge Papak properly considered both *Klamath* and Oregon's statute of frauds in evaluating Plaintiff's claims.

Plaintiff relies heavily on, and argues that Judge Papak's recommendation is inconsistent with, *Paul Gabrilis, Inc. v. Dahl*, 154 Or. App. 388 (1998). In *Paul Gabrilis*, a country club filed a trespass action against members whose contracts had allegedly been terminated. The members claimed that their memberships were perpetual and could not be terminated without cause. The

---

were the group of 111 that he has "annually" purchased. It is not clear, however, why it would not be simply the 99 tickets that Plaintiff alleges he actually purchased in 2010 in reliance on the Axe Society advertisement.

Oregon Court of Appeals agreed, holding that the *express* terms of the *written* membership agreement between the club and the members provided for a perpetual agreement. That the court *inferred* that agreement from express terms did not negate the fact that the agreement itself was written, presumably signed (as no party argued it was not), and "clearly provided for." Thus, *Paul Gabrilis* does not support Plaintiff's assertion that implied-in-fact contracts can establish perpetual rights, or that Plaintiff's claims are not subject to the statute of frauds.

Plaintiff also argues that the statue of frauds, which Judge Papak relied on in part, was not substantially briefed by either of the parties. As Defendant notes, however, Defendant argued in its motion to dismiss that Plaintiff's claims failed due to the statute of frauds to the extent they were premised on an alleged oral agreement. Plaintiff now argues that the doctrines of part performance and equitable estoppel take Plaintiff's contract claims outside the statute of frauds.

Under the doctrine of part performance:

> [A] court may enforce an agreement that would otherwise violate the statute of frauds if three requirements are met. First, the party asserting part performance must provide preponderating evidence of an agreement that is clear, certain and unambiguous in its terms. Second, there must be evidence of conduct unequivocally and exclusively referable to the contract. Finally, there must be equitable grounds for enforcing the agreement, such as facts justifying the avoidance of unjust enrichment or relief from fraud.

*Kazlauskas v. Emmert*, 248 Or. App. 555, 567 (2012) (citing *Brice v. Hrdlicka*, 227 Or. App. 460, 465-66 (2009) (citations and quotation marks omitted)). As discussed, Plaintiff has not sufficiently alleged a clear, certain, and unambiguous contract for the perpetual right to buy Timbers season tickets. As such, his assertion that the doctrine of part performance should apply is without merit.

For the doctrine of equitable estoppel to apply, five elements must be met:

> [T]here must (1) be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant

PAGE 6 – ORDER

> of the truth; (4) it must have been made with the intention that it
> should be acted upon by the other party; (5) the other party must
> have been induced to act upon it. For equitable estoppel to apply,
> the false representation must be one of existing material fact, and
> not of intention . . .

*Day v. Advanced M & D Sales, Inc.*, 336 Or. 511, 518-19 (2004) (quotation marks, alteration, and citations omitted). Additionally, "a party asserting estoppel to avoid the statute of frauds must show that the party asserting the statute of frauds made a misrepresentation beyond the contractual promise itself." *May Trucking Co. v. Nw. Volvo Trucks, Inc.*, 238 Or. App. 21, 38 (2010) (quotation marks omitted). Plaintiff alleges no misrepresentation on which he relied. Plaintiff argues only that he relied on an unspecified "oral agreement" in purchasing tickets.

Furthermore, even assuming, *arguendo*, that Plaintiff's claims *were* outside the statute of frauds, Judge Papak also found, and the Court agrees, that Plaintiff still does not allege any express or implied-in-fact agreement that "clearly provided" for a perpetual right to purchase tickets. At most, absent the statute of frauds, Plaintiff may be able to assert that there was a contract that allowed him to purchase one season ticket per year *in order to remain a member of the Axe Society*. Plaintiff's claims, however, do not relate to his lost membership in the Axe Society. Rather, Plaintiff alleges that Defendant breached a contract allowing Plaintiff to purchase 111 tickets—or as many tickets as Plaintiff bought the previous year—in perpetuity. Thus, this plausible interpretation (that Plaintiff had a right to purchase one ticket per year to maintain his Axe Society membership), which is barred by the statute of frauds, nevertheless does not support Plaintiff's claims in this case.

Finally, Plaintiff objects to the F&R's discussion of his promissory estoppel claim. The Court declines to adopt the F&R's finding that Plaintiff's promissory estoppel claim fails because Plaintiff's alleged promise is not provided for in a signed writing. Promissory estoppel serves "as an exception to the Statute of Frauds." *Potter v. Hatter Farms, Inc.*, 56 Or.

PAGE 7 – ORDER

App. 254, 262 (1982). The Court, however, adopts the F&R's conclusions that Plaintiff has not sufficiently alleged that the Axe Society advertisement induced him to purchase season tickets, or a promise made by Defendant guaranteeing Plaintiff a perpetual right to purchase tickets. As such, Plaintiff's contract claim premised on promissory estoppel is dismissed.

Finally, the Court adopts the F&R's recommendation that Plaintiff's contract claims premised on implied-in-fact contract and promissory estoppel be dismissed with prejudice, but that Plaintiff's claim for a breach of express contract be dismissed without prejudice.

**B. Misrepresentation**

Plaintiff objects to the F&R's conclusion that Plaintiff's intentional misrepresentation claim should be dismissed with prejudice, rather than without prejudice. Plaintiff does not object to the F&R's conclusions with respect to Plaintiff's claims of negligent misrepresentation. The Court has reviewed that finding for clear error and finds none. Plaintiff also does not object to the F&R's conclusion that Plaintiff's claim for intentional misrepresentation should be dismissed—only that he should be able to amend his Complaint if further discovery reveals facts that would support an intentional misrepresentation claim.

Under Oregon law, "the failure to perform a promise relating to future action or conduct does not constitute fraud." *Butte Motor Co. v. Strand*, 225 Or. 317, 321 (1960). "[T]o constitute actionable fraud there must be a false assertion in regard to some existing matter by which a party is induced to part with his money or property." *Id*. (quoting *Dolph v. Lennon's, Inc. et al.*, 109 Or. 336, 350 (1923)). As such, "[t]he mere nonperformance of a promise made in the course of negotiations or the failure to carry out an intention expressed in the course of such negotiations is not of itself either a fraud or evidence of a fraud, in the absence of allegations and proof that the representations were falsely and fraudulently made with intent to deceive." *Id*.

at 321-22 (quoting *Dolph*, 109 Or. at 350). If, however, "the statement of intent as to the future was made in bad faith," it may be proof of fraud. *Id*. at 322 (quoting *Dolph*, 109 Or. at 350).

The Court declines to adopt the F&R's statement that future-directed promises may *never* sound in fraud or misrepresentation. In this case, however, Plaintiff has not alleged any facts that suggest a statement made by Defendant that was fraudulent or in bad faith. There is also no indication that, given an opportunity to replead again, Plaintiff could allege such facts. As such, Plaintiff's claim for intentional misrepresentation is dismissed with prejudice.

**C. Intentional Interference with Economic Relations**

Plaintiff also objects to the F&R's conclusion that Plaintiff has not sufficiently alleged a claim for intentional interference with economic relations.

> To state a claim for intentional interference with economic relations, a plaintiff must allege: (1) the existence of a professional or business relationship; (2) intentional interference with that relationship; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and damage to the economic relations; and (6) damages.

*Nw. Nat. Gas Co. v. Chase Gardens, Inc.*, 328 Or. 487, 497-98 (1999). The parties dispute whether Plaintiff has sufficiently alleged elements (3) and (4)—whether Defendant is a third party to Plaintiff's relationship with his customers, and whether Defendant interfered with Plaintiff's business relationships for improper means or an improper purpose.

For tort liability "to be based on an actor's purpose, then the purpose must be to inflict injury on the plaintiff as such." *Nw. Nat. Gas Co. v. Chase Gardens, Inc.*, 328 Or. 487, 498 (1999) (quotation marks omitted). It is not improper for a third party to interfere with a business relationship for the purpose of maximizing its own profits or otherwise pursuing its "own business purposes as it sees them." *Eusterman v. Nw. Permanente, P.C.*, 204 Or. App. 224, 238 (2006) (quoting *Top Service Body Shop v. Allstate Ins. Co.*, 283 Or. 201, 210-12 (1978)

PAGE 9 – ORDER

(alteration omitted)). Plaintiff alleges that the Timbers told him that the team wanted to make the seats Plaintiff had previously purchased available to people on the waiting list for season tickets. ECF 22 at 7, ¶ 25. Plaintiff further alleges that Defendant in fact sold those tickets to another ticket broker. *Id*. For the reasons discussed above and in the F&R, however, Plaintiff has not alleged sufficient facts to suggest that Defendants acted through *improper means* in refusing to allow Plaintiff to continue buying season tickets. Further, Plaintiff did not specifically allege improper purpose in his Complaint and, even if he had, Plaintiff does not plead facts from which one could plausibly infer that Defendants had an improper purpose in refusing to sell Plaintiff tickets. The Court adopts the F&R's discussion on this point, and Plaintiff's intentional interference claim is dismissed without prejudice.

## CONCLUSION

The Court adopts in part Judge Papak's F&R, as explained and supplemented in this Order. Defendant's motion to dismiss (ECF 24) is GRANTED. Plaintiff's claim for breach of express contract and for intentional interference are dismissed without prejudice, and the remainder of Plaintiff's claims are dismissed with prejudice.

**IT IS SO ORDERED.**

DATED this 26th day of June, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge